UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
CALVIN LAI CHAN and BONNIE KWOK        )
CHING CHAN,                            )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )   Civil Action No.  1:09-cv-11265-JGD
                                       )
SAXON MORTGAGE SERVICE, INC.           )
WMC MORTGAGE LLC, WELLS                )
FARGO NATIONAL ASSOCIATION AS          )
TRUSTEE FOR BANK OF AMERICA            )
                                       )
        Defendants.                    )
_____)


## SAXON MORTGAGE SERVICE, INC. AND WELLS FARGO NATIONAL ASSOCIATION AS TRUSTEE FOR BANK OF AMERICA'S MOTION TO DISMISS

### (Memorandum of Law Incorporated)

Wells Fargo National Association As Trustee for Bank of America ("Wells Fargo"), and Saxon Mortgage Services, Inc. ("Saxon") move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Counts I (Violation of M.G.L. c. 140D), II (Truth in Lending), IV (Negligence), and V (Misrepresentation/Fraud).

This action arises out of a 2005 residential loan secured by a mortgage on property owned by Calvin and Bonnie Chan (the "Chans") originated by WMC Mortgage LLC, sold to Wells Fargo, and currently being serviced by Saxon.  After making regular payments for approximately four years, the Chans defaulted on their loan obligations and then (in an apparent attempt to avoid foreclosure) filed this action.  The Chans' claim that the Defendants induced them (through false representations) to execute the note and then failed to provide adequate and

968387.1 102735/11

accurate disclosures regarding the terms and conditions of their loan, in violation of the Truth In Lending Act ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA"), and G. L. c. 93A. As a result of the alleged violations, the Chans seek rescission and monetary damages. Several of the Chans' claims however are barred as a matter of law. In particular,

- Counts I and II which assert claims based upon the Federal and State lending statutes are barred as a matter of law because they are inapplicable to a servicer, such as Saxon;

- Count II which asserts a claim under the federal lending statute is barred as a matter of law against Wells Fargo because the statute requires that any claim be filed within thee years of the loan origination;

- Count IV and V, which assert tort based theories against both Saxon and Wells Fargo are barred as a matter of law by the three year statute of limitations.

As additional reasons to dismiss the Plaintiffs' claims, Saxon and Wells Fargo assert and aver as follows.

## ALLEGATIONS AS SET FORTH IN PLAINTIFFS' COMPLAINT

After three conversations, over approximately five months, Northside Mortgage Group, LLC ("Northside"), a mortgage broker, offered the Chans a "forty (40) year adjustable rate mortgage secured by their primary residence in the amount of $741,000," at an initial interest rate of 6.25%, with no "balloon payment." (Complaint, ¶¶ 9, 10, 11 and 12). After agreeing to the terms, Northside, with the help of Mr. Chan, completed a loan application. (Complaint, ¶ 14). The loan application contained inaccurate information which falsely inflated the collective income of the Chans. (Complaint, ¶ 15). Nevertheless, "the Chans executed the loan application and related loan documents disclosing the terms of the loan." (Id.)

On April 25, 2005, the Chans, unrepresented by counsel, attended the closing at an attorney's office (Complaint, ¶ 17). "No lawyer was present," no one "explained any of the documents," or "requested that they read them or asked if they understood them." (Id).

Nevertheless, the Chans executed all of the loan document. (Id.) After the closing the Chans received executed copies of the "Federal Truth in Lending Disclosure Statement, Settlement Statement Closing Instructions, Adjustable Rate Note, Mortgage [ ] Adjustable Rate Rider" and "the Notice of Right to Cancel . . ." (Complaint, ¶ 18). The Chans claim that the Notice of Right to Cancel that they received failed to indentify the date of refinancing transaction and rescission date. (Id).

After the closing, the closing attorney requested that the Chans execute and backdate additional loan documents including a "Balloon Rider." (Complaint, ¶ 19)

On or about July 2005, WMC sold the loan to the Bank of American and Saxon began serving the mortgage. (Complaint, ¶ 20).

For approximately three years, the Chans made regular monthly mortgage payments of principal and interest "in the monthly amount of $4,233.10." (Complain, ¶ 21). In or around June 2008, the interest increased and the Chans defaulted on their loan. (Complaint, ¶ 22).

In an effort to work with the Chans, Saxon, on behalf of Bank of America, adjusted the interest rate to 6.3%. (Complaint, ¶ 23). Nevertheless, approximately five months later, in or around November 2008, the Chans again defaulted. (Id.)

On January 29, 2009, a home service worker engaged by Saxon broke the front door lock on the Chans' residence. (Complaint, ¶ 24). The service worker represented that he had received an order from Saxon to winterize the house and was told by Saxon that the house was vacant. (Id.)

After this "incident" the Chans began to examine closely the loan documentation "they were provided at the closing of the loan" and discovered "numerous factual errors," including

- misrepresenting Mrs. Chan's income; and

- including terms inconsistent with the prior oral representations of Northbridge

(Complaint, ¶¶ 25 and 26). "Perplexed by the irregularities and discrepancies as shown on the face of the loan documents," the Chans consulted an attorney. (Complaint, ¶ 28).

On or about April 6, 2009, the Plaintiffs filed this action. The Plaintiffs have asserted claims against all of the Defendants for, among other things:

- Violation of M.G.L. c. 140D (CCCDA) and Violation of 15 U.S.C. § 1600 (TILA). These claims are based upon the alleged inadequate disclosures of the terms and conditions of the loan. In particular, the Plaintiffs claim that they did not receive two copies of a completed Notice of Right to Cancel;

- Negligence. The Defendants claim that the Defendants breached their duty to act reasonably and honestly;" (Complaint, ¶¶ 53, 54).

- Misrepresentation/Fraud. WMC falsified loan documents and later loan terms without informing the Chans and that Saxon and Wells Fargo have "participated and knowingly furthered the fraud and misrepresentation by seeking to enforce the loan documents and proceeding with foreclosure." (Complaint, ¶ 57).

## ARGUMENT

**A.  Count I and II Should Be Dismissed Against Saxon Because It, As A Servicer, Cannot Be Held Liable Under TILA or the CCCDA.**

Both TILA and the CCCDA specifically exclude liability against a servicer like Saxon. A servicer is not generally liable for rescission or other damages under TILA. See Payton v. New Century Mortg. Corp., 2003 U.S. Dist. LEXIS 18366 (N.D. Ill. Oct. 14, 2003). While assignees of loans may be liable for TILA and CCCDA violations, the statutes draw a distinction between mere servicers of loans (such as Saxon) and assignees. See 15 U.S.C. § 1641(f)(1); G. L. c. 140D, § 33(e)(1). Under both statutes, a servicer may be treated as an assignee only if the

servicer is or was the owner of the obligation. 15 U.S.C. § 1641(f)(1); G. L. c. 140D, § 33(e)(1). Even if that servicer technically owns the obligation, it is not to be considered an assignee if it merely holds ownership for purposes of administrative convenience. 15 U.S.C. § 1641(f)(2); G. L. c. 140D, § 33(e)(2). As a result, claims against servicers shall be dismissed. See Cleveland v. Deutsche Bank Nat'l Trust Co., 2009 U.S. Dist. LEXIS 7165, *5-6 (S.D. Ca. 2009); Short v. Wells Fargo Bank Minnesota, N.A., 401 F. Supp. 2d 549 (S.D.W.V. 2005); Walker v. Gateway Fin. Corp., 286 F. Supp. 2d 965, *10-11 (N.D. Ill. 2003).

In their Complaint, the Chans specifically identify Saxon as a servicer. In particular, paragraph 5 of the Complaint states that "at all relevant times, Saxon has serviced the Chan's first mortgage loan" and in paragraph 20 "Saxon began servicing the mortgage." (Complaint, ¶ ¶ 5 and 20). By the plain language of the statute, Saxon cannot be held liable under Counts I and II as a matter of law.

**B.     The Statute Of Limitations Has Expired On The TILA Claim Against Wells Fargo**

Under TILA, (if the required disclosures were not provided), the right of rescission expires three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first. Under the TILA, a consumer acquires certain rescission rights in connection with any credit transaction where the creditor acquires a security interest in the consumer's principal dwelling. See 15 U.S.C. § 1635(a). Ordinarily, the consumer has the right to rescind until midnight of the third business day after either the consummation of the transaction, or the delivery of the disclosure forms required by the statute, whichever is later. See id. If, however, the creditor fails to provide adequate notice of the consumer's statutory rescission

rights, the rescission period is extended until three years after the transaction date. See 12 C.F.R. § 226.23(a)(3).[1]

TILA does more than simply govern the time for bringing a lawsuit. See Beach v. Ocwen Federal Bank, 523 U.S. 410, 417 (1998). It "govern[s] the life of the underlying right as well." Id. In other words, a consumer absolutely no longer has a right to rescind, under federal law, once that three year period has expired. Id. (holding that a debtor cannot raise a claim by way of recoupment under TILA after three years from the date of the transaction has passed); see also In re Fidler, 226 B.R. 734, 736-737 (Bank. D. Mass. 1998). "Thus, no right of rescission under § 1635 exists after three years, whether asserted offensively or defensively." In re Fidler, 226 B.R. at 737.

In this case, the loan was originated on April 25, 2005. (Complaint, ¶ 17). Accordingly, any TILA claim had to be "brought" on or before April 25, 2008. The Plaintiffs filed this action on April 6, 2009 -- almost a year after the statute of limitations expired. Accordingly Count II must be dismissed.

### C. The Claim For Negligence And Misrepresentation Are Barred

Plaintiffs tort claims are barred by the three year statute of limitations. Under Massachusetts law tort claims such as the two asserted by the Plaintiffs are barred unless they are asserted within three years of the accrual of the cause of action. M.G.L. c. 260, § 2A. A cause of action "accrues" at the time of the plaintiff's injury, or, in the case of breach of contract, at the time of the breach. See Cambridge Plating Co., Inc. v. Napco, Inc., 991 F 2d. 21, 25 (1st Cir. 1993). Accordingly, the Plaintiffs' claims "accrued" at the time the Defendants "falsified documents," altered "loan terms without informing the Chans in connection with the origination

---

[1] Section 1640 requires claims for damages to be "brought . . . within one year from the date of the occurrence of the violation."

and consummation of the mortgage and note at issue" and acted unreasonably and dishonestly -- April 25, 2005 – the date of the closing.

The Plaintiffs will undoubtedly attempt to save their claims by invoking the doctrine of equitable tolling or the so-called discovery rule.  To invoke the doctrine of "equitable tolling" they must prove that "(1) sufficient facts were [not] available to put a reasonable [borrower] in the plaintiff[s'] position on inquiry notice of the possibility of fraud; and (2) plaintiffs exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct."  Salois v. Dime Savings Bank of New York, et al., 128 F. 3d 20, 25 (1st Cir. 1997).  "In simpler terms, fraud may render reasonable a plaintiff's otherwise unreasonable conduct, but there are limits:  plaintiffs must still exercise reasonably diligence in discovering they have been victims of fraud."  Id.

In this case, all information necessary to ascertain the cause of action was in the plaintiffs' possession from the time they entered the loan agreements. See Maggio, 824 F.2d at 129 (tolling unavailable where plaintiff had ample information at his disposal to suggest cause of action).  In fact, the Plaintiffs' confirm in their complaint that all of the "irregularities and discrepancies" where "shown on the **face** of the loan documents."  (Complaint, ¶ 28) (emphasis added).  These loan documents notified Plaintiffs of the terms and conditions of the loan including the interest rate, the amount it would adjust, when it would adjust, and how it would work.  If there was any misrepresentation or negligence  regarding the nature of the loans, the loan documents plaintiffs signed would have put them on notice of the fraud or negligence. Cf. Lynch v. Signal Finance Co., 367 Mass. 503, 507-08, 327 (1975) (rejecting tolling where "plaintiffs knew the terms of the loan and knew what had been disclosed to them and what had not").

Nor should the Plaintiffs be able to avoid this conclusion by claiming that they did not read the loan documents. The simple fact is that they signed, agreed to and accepted the terms of these loan documents. Everett J Prescott, Inc. v. S&H Contracting Company, Inc., 2000 Mass. Super. Lexis 142 ("Proof of the defendant's signature entitles the plaintiff to the benefit of the presumption that one who signs an instrument has read and understood its contents and has assented to its terms and legal effect"); See Dobia v. Hopey, 353 Mass. 600 (1968) (one who signs a writing that is obviously a legal document is presumed to be fully aware of its terms); Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 440 (1980) ("One who knowingly signs a writing that is obviously a legal document without bothering to ascertain the contents of the writing is ordinarily bound by its terms, in the same manner as if he had been fully aware of those terms, unless it can be proved that he was induced to sign it by fraud or undue influence . . . That he does not know the terms he is agreeing to is not a mistake, but a conscious choice and a known risk"); Cohen v. Santoianni, 330 Mass. 187, 193 (1953) ("The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not.") The law simply precludes the Plaintiffs from claiming ignorance of the unambiguous terms of a contract she signed.

    (a)    **Claims of Negligence Are Barred By The Economic Loss Doctrine**

The Plaintiffs' claims for purely economic losses are barred by the economic loss doctrine. Under the doctrine, which is well established in Massachusetts law, "purely economic losses are unrecoverable for tort and strict liability actions in the absence of personal injury or property damage." Bay State Spray & Provincetown Steamship Inc. v. Caterpillar Tractor Co.,

404 Mass. 103 (1989) (architects sued by a masonry contractor on a convention center project entitled to summary judgment); Brennan v. Morano, 24 Mass. L.Rep. 101 (2008) (Under Massachusetts law, negligence claims "in the absence of personal injury or property damages, are barred by the economic loss doctrine."); FMR Corp v. Boston Edison Co., 415 Mass. 393 (1993) ("[p]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.") Priority Finishing Corp v. LAL Constr. Co., Inc., 40 Mass.App.Ct. 719, 720 (1996) ("the economic loss doctrine provides that when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the plaintiff's person or property, the plaintiff may not recover for purely economic losses.")  Economic loss has been defined as "damages for inadequate value, costs or repair and replace of defective product or consequent loss of profits without any claim of personal injury or damage to other property." Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 (1980).

In this case, the Plaintiffs have not alleged nor do they seek damages as a result of personal injury or physical damage to property.  Rather the Plaintiffs' sole damages are economic – the additional costs incurred as a result of the loan.

 (b) **The Plaintiff Has Failed To Set Forth A Claim of Misrepresentation**

The Plaintiffs have identified with any particularity the representations made by either Saxon or Wells Fargo despite their unequivocal obligation to meet a heightened pleading standard under Mass R. Civ. P. 9.  "Mere allegations of fraud, … averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985).  "At a minimum, a plaintiff alleging fraud must particularize the

identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place.  In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm." Equipment & Sys. for Industry, Inc. v. Northmeadows Constr. Co., Inc., 59 Mass. App. Ct. 931, 931-32 (2003) (citing Friedman v. Jablonski, 371 Mass. 482, 488-89 (1976)) (emphasis added).  "When multiple defendants are involved in cases . . . Rule 9(b) requires that fraud be alleged particularly as to each defendant." Goebel v. Schmid Brothers, 871 F. Supp. 68, 73 (D. Mass. 1994); see also Fleet Credit Corp. v. Sion, 893 F.2d. 441, 444-45 (1st Cir. 1990).

This "heightened" pleading requirement for allegations of fraud is designed to "protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 (1st Cir. 1980)

In this case,  an adequate pleading would identify:

- The specific misrepresentations of Saxon and Wells Fargo;
- All the participants in or witnesses to the communications;
- The period within which these misrepresentations were made;
- Saxon and Wells Fargo's putative knowledge of the falsity;
- The alleged materiality of the misrepresentation;
- The Plaintiffs' reliance upon these misrepresentations; and
- The harm resulting from the detrimental reliance.

None of these facts are set forth in the complaint.  Nowhere does the complaint identify the person making the representation, the specific contents of the representation made, the date the representation was made, or where the representation was made.   Instead, the Plaintiffs make

conclusory allegations of fraud or fraudulent conduct, refer generally to business entities, without identifying any particular person who made the statement or representing and lump together both the corporate and individual defendants.

Even more troubling is that the Plaintiffs do not specify the materiality of any alleged misrepresentations, how the Plaintiffs may have relied upon the statement and how any harm resulted to either plaintiff.  Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) ( In addition to specifications of time, place and the content of alleged misrepresentations, plaintiffs are required to plead a factual basis that would make it reasonable to determine that a statement was materially false or misleading).

The Plaintiffs' failure to make these critical factual allegations is no mere oversight.  The Plaintiffs intentional grouping of the Saxon and Wells Fargo with WMC, is merely an attempt to conceal the fact that the Plaintiffs cannot meet the heightened pleading requirement.

        Defendants,
SAXON MORTGAGE SERVICES, INC. AND
WELLS FARGO NATIONAL ASSOCIATION AS
TRUSTEE FOR BANK OF AMERICA
By their attorneys,

/s/ Richard E. Briansky
Richard E. Briansky (BBO# 632709)
rbriansky@princelobel.com
Joseph Calandrelli (BBO# 666128)
jcalandrelli@princelobel.com
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel:  617-456-8000
Fax: 617-456-8100

Dated:   August 7, 2009

<u>L.R. 7.1 Certification</u>

I, Richard E. Briansky, certify that on August 6, 2009 I had a telephone conversation with Christopher Weld, Jr., counsel of record for plaintiffs, in an a good faith attempt to resolve or narrow the issues presented by this motion.

/s/ Richard E. Briansky

<u>CERTIFICATE OF SERVICE</u>

I, Richard E. Briansky, certify that a true and accurate copy of the foregoing document was filed through the Court's ECF system this 7th day of August, 2009. I further certify that a true and accurate copy of the foregoing document was sent on August 7, 2009 by electronic mail and first class postage prepaid, to:

| | |
|---|---|
| Christopher Weld, Jr. Esq. | David A. Scheffel, Esq. |
| Todd & Weld LLP | Eric Epstein, Esq. |
| 28 State Street, 31st Floor | Dorsey & Whitney LLP |
| Boston, MA 02109 | 250 Park Avenue |
| *(Attorney for Plaintiffs)* | New York, NY 10177 |
| | (*Attorney for Defendant WMC Mortgage LLC)* |

/s/ Richard E. Briansky