<u>**REVISED**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CALVIN LAI CHAN and BONNIE KWOK CHING CHAN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:09-cv-11265-JGD |
| SAXON MORTGAGE SERVICE, INC. WMC MORTGAGE LLC, WELLS FARGO NATIONAL ASSOCIATION AS TRUSTEE FOR BANK OF AMERICA | ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>SAXON MORTGAGE SERVICE, INC. AND WELLS FARGO NATIONAL ASSOCIATION AS TRUSTEE FOR BANK OF AMERICA'S MOTION TO DISMISS</u>

**(Memorandum of Law Incorporated)**

Defendants Saxon Mortgage Services, Inc. ("Saxon") and Wells Fargo National Association as Trustee for Bank of America ("Wells Fargo"), move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Count I (Violation of M.G.L. c. 140D), Count II (Truth in Lending Act), Count IV (Negligence), and Count V (Misrepresentation/Fraud) of the Plaintiffs' complaint. These claims are barred by the plain meaning of the statutes on which they rely, by the statute of limitations regarding tort claims, and by the strictures of Fed.R.Civ.P. 9 (b).

This action arises out of a 2005 residential loan secured by a mortgage on property owned by Calvin and Bonnie Chan (the "Chans"). Defendant WMC Mortgage LLC originated the loan and sold it to Wells Fargo, and defendant Saxon is the current servicer. After making regular payments for approximately four years, the Chans defaulted on their loan obligations and then filed this action. The Chans claim that the Defendants induced them (through false

971249.1102735/11

representations) to execute the loan documents and then failed to provide adequate and accurate disclosures regarding the terms and conditions of their loan, in violation of the Truth In Lending Act ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA"), and G. L. c. 93A. As a result of the alleged violations, the Chans seek rescission and monetary damages.

Several of the Chans' claims are barred as a matter of law. In particular,

- Counts I and II asserting claims based upon the federal and state truth in lending statutes are inapplicable to a servicer such as Saxon;

- Count II asserting a claim under the federal truth in lending statute is time-barred under TILA; and

- Counts IV and V, asserting tort-based theories of liability against both Saxon and Wells Fargo are barred as a matter of law by the three-year statute of limitations set forth in M.G.L.c. 260, § 2A.

## ALLEGATIONS AS SET FORTH IN PLAINTIFFS' COMPLAINT

The Chans allege that in 2005, Northside Mortgage Group, LLC ("Northside"), a mortgage broker, offered the Chans a "forty (40) year adjustable rate mortgage secured by their primary residence in the amount of $741,000," at an initial interest rate of 6.25%, with no "balloon payment." (Complaint, ¶¶ 9, 10, 11 and 12). After the Chans agreed to these terms, Northside, with the help of Mr. Chan, completed a loan application. (Complaint, ¶ 14). The loan application allegedly contained inaccurate information which falsely inflated the collective income of the Chans. (Complaint, ¶ 15). Nevertheless, "the Chans executed the loan application and related loan documents disclosing the terms of the loan." (Id.)

On April 25, 2005, the Chans, attended the closing at an attorney's office. (Complaint, ¶ 17). The Chans allege that "no lawyer was present," no one "explained any of the documents," and no one "requested that [the Chans] read them or asked if they understood them." (Id). Nevertheless, the Chans executed all of the loan documents. (Id.) After the closing the Chans received executed copies of a "Federal Truth in Lending Disclosure Statement, Settlement

Statement Closing Instructions, Adjustable Rate Note, Mortgage" "Adjustable Rate Rider" and "the Notice of Right to Cancel . . ." (Complaint, ¶ 18).  The Chans claim that the Notice of Right to Cancel, a document that informs a borrower of his statutory right to cancel a refinancing transaction within three days, failed to indentify the date of the refinancing transaction and rescission date.  (Id).   After the closing, the closing attorney allegedly requested that the Chans execute and backdate additional loan documents including a "Balloon Rider."  (Complaint, ¶ 19)

On or about July 2005, WMC sold the loan to Wells Fargo and Saxon began serving the mortgage. (Complaint, ¶ 20).  For approximately three years, the Chans made regular mortgage payments of principal and interest "in the monthly amount of $4,233.10."  (Complaint, ¶ 21).  In or around June 2008, in accordance with loan documents, the interest rate increased pursuant to the terms of the loan and the Chans defaulted on their loan. (Complaint, ¶ 22).

In an effort to work with the Chans, Saxon, on behalf of Wells Fargo, adjusted the interest rate downward to 6.3%. (Complaint, ¶ 23).  Nevertheless, approximately five months later, in or around November 2008, the Chans again defaulted.  (Id.)

According to the Chans' complaint, on January 29, 2009, a home service worker engaged by Saxon allegedly broke the front door lock on the Chans' residence. (Complaint, ¶ 24).  The service worker represented that Saxon had instructed him to winterize the house and had told him that it  was vacant.  (Id.)

After this "incident" the Chans began to examine closely the loan documentation "they were provided at the closing of the loan" and discovered "factual errors," including misrepresenting Mrs. Chan's income; and including terms inconsistent with the prior oral representations of Northside (Complaint, ¶¶ 25 and 26).  "Perplexed by the irregularities and discrepancies as shown on the <u>face</u> of the loan documents," the Chans consulted an attorney.  (Complaint, ¶ 28) (emphasis supplied).  On or about April 23, 2009, the Plaintiffs filed this action.

## ARGUMENT

A.     **Count I and II Should Be Dismissed Against Saxon Because It, As A Servicer, Cannot Be Held Liable Under TILA or the CCCDA.**

Counts I and II of the Complaint allege claims under the federal Truth-in-Lending Act ("TILA") and the associated state statute, the Massachusetts Consumer Credit Disclosure Action, M.G.L. c. 140D ("CCCDA"). The Plaintiffs alleged that the Defendants made inadequate disclosures of the terms and conditions of the loan in violation of these statutes. In particular, the Plaintiffs claim that they did not receive two copies of a completed "Notice of Right to Cancel." However, both of these statutes specifically exclude liability for rescission and damages against a servicer such as Saxon. See Payton v. New Century Mortg. Corp., 2003 U.S. Dist. LEXIS 18366 (N.D. Ill. Oct. 14, 2003). While assignees of loans may be liable for TILA and CCCDA violations, the statutes draw a distinction between mere servicers of loans (such as Saxon) and assignees. See 15 U.S.C. § 1641(f)(1); G. L. c. 140D, § 33(e)(1). Under both statutes, a servicer may be treated as an assignee only if the servicer is or was the owner of the obligation. 15 U.S.C. § 1641(f)(1); G. L. c. 140D, § 33(e)(1). Even if that servicer technically owns the obligation, it is not to be considered an assignee if it merely holds ownership for purposes of administrative convenience. 15 U.S.C. § 1641(f)(2); G. L. c. 140D, § 33(e)(2). As a result, TILA and CCCDA claims against servicers are frequently dismissed. See Cleveland v. Deutsche Bank Nat'l Trust Co., 2009 U.S. Dist. LEXIS 7165, *5-6 (S.D. Ca. 2009); Short v. Wells Fargo Bank Minnesota, N.A., 401 F. Supp. 2d 549 (S.D.W.V. 2005); Walker v. Gateway Fin. Corp., 286 F. Supp. 2d 965, *10-11 (N.D. Ill. 2003).

In their complaint, the Chans allege that Saxon is a servicer. In particular, paragraph 5 of the complaint states that "at all relevant times, Saxon has serviced the Chan's first mortgage loan" and paragraph 20 of the complaint states that "Saxon began servicing the mortgage." (Complaint, ¶ ¶ 5 and 20). Nowhere do they allege that Saxon have ever owned the mortgage

loan nor could they. As such, by the plain language of the statute, Saxon cannot be held liable under Counts I and II.

B.    **The Statute Of Limitations Has Expired On The TILA Claims**

Under TILA, a consumer who refinances a mortgage on his principal dwelling acquires certain limited rescission rights. See 15 U.S.C. § 1635(a). Specifically, the consumer has the right to rescind the transaction until midnight of the third business day after either (1) the consummation of the transaction, or (2) the delivery of the disclosure forms required by the statute, whichever is later. See id. If, however, the creditor fails to provide adequate notice to the consumer of these statutory rescission rights, the rescission period is extended until three years after the transaction date. See 12 C.F.R. § 226.23(a)(3).[1]

In this case, the loan transaction was consummated on April 25, 2005. (Complaint, ¶ 17). Accordingly, any TILA claim had to be brought on or before April 25, 2008. The Plaintiffs filed this action on April 6, 2009 -- almost a year after any right of rescission expired. In re Fidler, 226 B.R. at 737 ("[N]o right of rescission under § 1635 exists after three years, whether asserted offensively or defensively.")

C.    **The Claim For Negligence And Misrepresentation Are Barred**

Plaintiffs allege that Defendants negligently breached their duty to act reasonably and honestly (Complaint, §§ 53, 54), intentionally falsified loan documents and altered loan terms without informing the Chans, and "participated and knowingly furthered the fraud and misrepresentation by seeking to enforce the loan documents and proceeding with foreclosure." (Complaint, § 57). These tort claims are barred by the three year statute of limitations. Under Massachusetts law, tort claims must be asserted within three years of the accrual of the cause of action. M.G.L. c. 260, § 2A. A cause of action "accrues" at the time of the plaintiff's injury, or,

---

[1] Section 1640 requires claims for damages to be "brought . . . within one year from the date of the occurrence of the violation."

in the case of breach of contract, at the time of the breach.  See Cambridge Plating Co., Inc. v. Napco, Inc., 991 F 2d. 21, 25 (1st Cir. 1993).  Accordingly, the Plaintiffs' claims "accrued" at the time the Defendants allegedly "falsified documents," altered "loan terms without informing the Chans in connection with the origination and consummation of the mortgage and note at issue" and acted unreasonably and dishonestly.  These events occurred no later than April 25, 2005 – the date of the closing.

The Plaintiffs will undoubtedly invoke the doctrine of equitable tolling, or the so-called "discovery rule."  To establish "equitable tolling," the Plaintiffs must prove that "(1) sufficient facts were [not] available to put a reasonable [borrower] in the plaintiff[s'] position on inquiry notice of the possibility of fraud; and (2) plaintiffs exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct." Salois v. Dime Savings Bank of New York, et al., 128 F. 3d 20, 25 (1st Cir. 1997).  "In simpler terms, fraud may render reasonable a plaintiff's otherwise unreasonable conduct, but there are limits:  plaintiffs must still exercise reasonable diligence in discovering they have been victims of fraud."  Id.

In this case, all the information necessary for Plaintiffs to discover their purported tort claims was in their possession from the time they entered into the loan agreements. See Maggio v. Gerard Freeze & Ice Co., 824 F.2d 123, 129 (1st Cir. 1987)(tolling unavailable where plaintiff had ample information at his disposal to suggest cause of action).  In fact, the Plaintiffs confirm in their complaint that all of the "irregularities and discrepancies" where "shown on the **face** of the loan documents." (Complaint, ¶ 28) (emphasis added).  These loan documents notified Plaintiffs of the terms and conditions of the loan including the interest rate, the amount it would adjust, and when it would adjust.  If there had been any misrepresentation or negligence regarding the nature of the loans, the loan documents Plaintiffs signed would have put them on notice of the fraud or negligence. Cf. Lynch v. Signal Finance Co., 367 Mass. 503, 507-08, 327

(1975) (rejecting tolling where "plaintiffs knew the terms of the loan and knew what had been disclosed to them and what had not").

Plaintiffs cannot claim the protection of equitable tolling by alleging that they did not read the loan documents. The simple fact is that they signed, agreed to and accepted the terms of all relevant loan documents. "Proof of the defendant's signature entitles the plaintiff to the benefit of the presumption that one who signs an instrument has read and understood its contents and has assented to its terms and legal effect." Everett J Prescott, Inc. v. S&H Contracting Company, Inc., 2000 Mass. Super. Lexis 142; See Dobia v. Hopey, 353 Mass. 600 (1968) (one who signs a writing that is obviously a legal document is presumed to be fully aware of its terms); Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 440 (1980) ("One who knowingly signs a writing that is obviously a legal document without bothering to ascertain the contents of the writing is ordinarily bound by its terms, in the same manner as if he had been fully aware of those terms, unless it can be proved that he was induced to sign it by fraud or undue influence . . . That he does not know the terms he is agreeing to is not a mistake, but a conscious choice and a known risk"); Cohen v. Santoianni, 330 Mass. 187, 193 (1953) ("The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not.") The law simply precludes the Plaintiffs from claiming ignorance of the unambiguous terms of contracts they signed.

  (a)  **<u>Claims Of Negligence Are Barred By The Economic Loss Doctrine</u>**

The Plaintiffs' negligence claim for purely economic losses is barred for any additional reason: the economic loss doctrine. Under the doctrine, which is well established in Massachusetts law, "purely economic losses are unrecoverable for tort and strict liability actions in the absence of personal injury or property damage." Bay State Spray & Provincetown Steamship Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1989) (architects sued by a masonry

contractor on a convention center project entitled to summary judgment); Brennan v. Morano, 24 Mass. L.Rep. 101 (2008) (Under Massachusetts law, negligence claims "in the absence of personal injury or property damages, are barred by the economic loss doctrine."); FMR Corp v. Boston Edison Co., 415 Mass. 393 (1993) ("[p]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.") Priority Finishing Corp v. LAL Constr. Co., Inc., 40 Mass.App.Ct. 719, 720 (1996) ("the economic loss doctrine provides that when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the plaintiff's person or property, the plaintiff may not recover for purely economic losses.") Economic loss has been defined as "damages for inadequate value, costs or repair and replacement of defective product or consequent loss of profits without any claim of personal injury or damage to other property." Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 (1980).

In this case, the Plaintiffs do not seek damages as a result of personal injury or physical damage to property. Rather, the Plaintiffs' sole alleged damages are economic – the additional costs incurred as a result of the loan. Accordingly, their negligence claim is barred.

(b) **The Plaintiffs Have Failed To Set Forth A Claim Of Misrepresentation**

The Plaintiffs have failed to identify with any particularity the alleged false statements of fact underlying their misrepresentation claim against Saxon and Wells Fargo despite the commands of Fed. R. Civ. P. 9. "Mere allegations of fraud, … averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985). "At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm." Equipment & Sys. for Industry, Inc. v. Northmeadows

Constr. Co., Inc., 59 Mass. App. Ct. 931, 931-32 (2003) (citing Friedman v. Jablonski, 371 Mass. 482, 488-89 (1976)) (emphasis added).  "When multiple defendants are involved in cases . . . Rule 9(b) requires that fraud be alleged particularly as to each defendant." Goebel v. Schmid Brothers, 871 F. Supp. 68, 73 (D. Mass. 1994); see also Fleet Credit Corp. v. Sion, 893 F.2d. 441, 444-45 (1st Cir. 1990).

This "heightened" pleading requirement for allegations of fraud is designed to "protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery."  McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 (1st Cir. 1980).

In this case,  an adequate pleading would identify:

- the specific misrepresentations of Saxon and Wells Fargo;
- all the participants in or witnesses to the communications;
- the period within which these misrepresentations were made;
- Saxon and Wells Fargo's putative knowledge of the falsity of these statements;
- the alleged materiality of the misrepresentation;
- the Plaintiffs' reliance upon these misrepresentations; and
- the harm resulting from the detrimental reliance.

None of these facts are set forth in the complaint.  Nowhere does the complaint identify the person making the representation, the specific contents of the representation made, the date the representation was made, or where the representation was made.   Instead, the Plaintiffs make conclusory allegations of fraud or fraudulent conduct, fail to identify any particular person who made any fraudulent statements and lump together the corporate defendants.

Plaintiffs also fail to specify the materiality of any alleged misrepresentations, how the Plaintiffs may have relied upon the statements and how any harm resulted to either plaintiff.

Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)( In addition to specifications of time, place and the content of alleged misrepresentations, plaintiffs are required to plead a factual basis that would make it reasonable to determine that a statement was materially false or misleading)[2].

The Plaintiffs' failure to make these critical factual allegations is no mere oversight. The Plaintiffs intentional grouping of the Saxon and Wells Fargo with WMC, is merely an attempt to conceal the fact that the Plaintiffs cannot meet the heightened pleading requirement.

## **CONCLUSION**

WHEREFORE, for the above reasons, Saxon and Wells Fargo request that Count I (Violation of M.G.L. c. 140D), Count II (Truth in Lending Act), Count IV (Negligence), and Count V (Misrepresentation/Fraud) of the Plaintiffs' complaint be dismissed.

> Defendants,
> SAXON MORTGAGE SERVICES, INC. AND
> WELLS FARGO NATIONAL ASSOCIATION AS
> TRUSTEE FOR BANK OF AMERICA
> By their attorneys,
>
> /s/ *Richard Briansky*
> Richard E. Briansky (BBO# 632709)
> rbriansky@princelobel.com
> Joseph Calandrelli (BBO# 666128)
> jcalandrelli@princelobel.com
> PRINCE, LOBEL, GLOVSKY & TYE LLP
> 100 Cambridge Street, Suite 2200
> Boston, MA 02114
> Tel: 617-456-8000
> Fax: 617-456-8100

Dated: August 7, 2009

---

[2] Because Wells Fargo did not originate the loan, any statement made by Saxon or Wells Fargo would likely have occurred after the loan originated. Thus, any such statement could not have induced the Chans to take the loan at issue.

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

On August 6, 2009, I contacted attorney Christopher Weld, Jr. in a good faith attempt to resolve the disputes set forth herein. After discussing the issues, we were unable to resolve the disputes set forth in the motion.

/s/ *Richard E. Briansky*

## CERTIFICATE OF SERVICE

I, Richard E. Briansky, certify that a true and accurate copy of the foregoing document was filed through the Court's ECF system this 7th day of August, 2009. I further certify that a true and accurate copy of the foregoing document was sent on August 7, 2009 by electronic mail and first class postage prepaid, to:

Christopher Weld, Jr. Esq.  
Todd & Weld LLP  
28 State Street, 31st Floor  
Boston, MA 02109  
*(Attorney for Plaintiffs)*

David A. Scheffel, Esq.  
Eric Epstein, Esq.  
Dorsey & Whitney LLP  
250 Park Avenue  
New York, NY 10177  
(*Attorney for Defendant WMC Mortgage LLC*)

*/s/ Richard E. Briansky*