UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CALVIN LAI CHAN and BONNIE KWOK CHING CHAN,<br>　　Plaintiffs,<br><br>v.<br><br>SAXON MORTGAGE SERVICE, INC.,<br>WMC MORTGAGE LLC, WELLS FARGO<br>NATIONAL ASSOCIATION AS TRUSTEE<br>FOR BANK OF AMERICA,<br>　　Defendants. | Civil Action No.<br>1:09-cv-11265 |

### AFFIDAVIT OF CALVIN CHAN IN SUPPORT OF PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

I, Calvin Chan, hereby state under oath as follows:

1. I am an individual residing at 31 Woburn Street, Andover, Massachusetts. I provide the following information based on my personal knowledge.

2. I am offering this affidavit to authenticate the attached documents and to support certain of the allegations contained in the Amended Complaint.

3. I received a package of documents via postal mail dated April 8, 2005 from the WMC representative with whom I had been discussing the refinancing of my two prior mortgage loans with WMC. Included in those documents was a nine-page Mortgage Broker Fee Agreement, which included a Mortgage Broker Disclosure on page 5.[1] The package of documents also included a Uniform Residential Loan Application (the "April 12 Loan Application"). Both documents had already been filled out by the WMC representative. On

---

[1] I recently discovered that the Mortgage Broker Fee Agreement that was provided by WMC is missing a page 3. Either the page 3 has always been missing or the pages are simply incorrectly numbered. The page referenced here refer to the printed page number.

April 12, 2005, I and my wife Bonnie Chan ("Mrs. Chan") signed and dated the Mortgage Broker Fee Agreement, including but not limited to the Mortgage Broker Disclosure, and the April 12 Loan Application. A true and correct copy of the Mortgage Broker Fee Agreement is attached hereto as Exhibit A. A true and correct copy of the April 12 Loan Application is attached hereto as Exhibit B.

4. The Mortgage Broker Disclosure states that the loan "will not" have a balloon payment, that the adjustable rate will be 6.25% for a period of three years, and that the annual percentage rate ("APR") will be 6.395%. (See Exhibit A at 5.) The Mortgage Broker Disclosures originally stated a two-year adjustable rate period, as can be seen in the stricken handwriting, but the error was corrected on this document prior to the closing. Unbeknownst to me, none of the other terms were accurately reflected in the final loan documents that were presented to me for signature.

5. The April 12, 2005 Loan Application states that the adjustable rate is 6.25% for a term of two years. (See Exhibit B.) The 6.25% rate was later changed without my or Mrs. Chan's knowledge or permission to 6.3%.

6. At the closing for the loan on April 25, 2005, I was provided with the Federal Truth-in-Lending Disclosure Statement, as well as other documents. This statement provides that the annual percentage rate ("APR") is 9.456%, and that the loan term is thirty (30) years with a balloon payment of $490,832.84. A true and correct copy of the Federal Truth-In-Lending Disclosure Statement is attached hereto as Exhibit C. I was not aware of these changes in terms and would not have agreed to them.

7. At the closing, without realizing it, I and Mrs. Chan executed a second Uniform Residential Loan Application dated April 25, 2005. We were unaware of the changes in the

terms from the prior loan documents and disclosures and were instructed to sign this loan application without reading it.

8. The closing attorney's employee who assisted at the closing retained the only copy of the executed loan application and did not provide a copy for me or Mrs. Chan to take home.

9. Several days after the closing, I received in the mail a package of the remaining loan documents from the closing attorney's office. These documents consisted of unsigned copies of disclosures as well as an *unexecuted* copy of the April 25 Loan Application (the "Unexecuted April 25 Loan Application"). A true and correct copy of the Unexecuted April 25 Loan Application with the Massachusetts Addendum to the Uniform Residential Loan Application is attached hereto as Exhibit D. The Addendum indicates an approximate maturity date for the loan of May 1, 2045. No signatures or handwriting appear on the Unexecuted April 25 Loan Application, but "February 15, 2005" is typed in as the date of the interview with the borrowers. (See Exhibit D at 3.) The Unexecuted April 25 Loan Application is the only copy of my loan application that WMC and/or its attorney provided to me following the closing and the only copy that I or Mrs. Chan possessed until May 19, 2009. This copy had a facsimile date and time stamp of April 26, 2005 with an area code of 682. (Id.)

10. Included in the documents and disclosures mailed after the closing was a document titled Massachusetts Mortgage Broker Disclosures Statement, dated April 25. This document states an APR of 9.787%, a loan term of 40 years, and a final balloon payment of $493,088.19. A true and correct copy of the Massachusetts Mortgage Broker Statement is attached as Exhibit E.

3

11. Also included in the disclosures mailed after the closing was an unexecuted copy of the Mortgage Lender's Disclosures. The Mortgage Lender's Disclosures document contains a section to be filled-in if a balloon payment is included in the loan, and that section is blank. A true and correct copy of the Mortgage Lender's Disclosures is attached hereto as Exhibit F.

12. On May 7, 2005, I received in the mail what I later discovered to be a "Balloon Rider" forwarded to me from the closing attorney's office. The Balloon Rider was sent via a cover letter from Melissa Kabula of WMC. A true and correct copy of the cover letter and Balloon Rider is attached hereto as Exhibit G.

13. In April 2009, I discovered from my old files that for reasons unrelated to the loan refinancing, I had requested in early May 2005 a copy of my and Mrs. Chan's credit reports from Experian, one of several national credit reporting agencies. A true and correct copy of the credit reports, dated May 3, 2005, are attached hereto as Exhibit H. As I later discovered, the credit reports show that WMC or a company acting on its behalf requested a copy of my and Mrs. Chan's credit reports on February 15, 2005. (Id. at 14.)

14. On May 19, 2009, I received, through counsel, copies of several loan documents from a law firm in Boston that Saxon Mortgage Services, Inc., the servicer of my loan, had engaged to initiate the foreclosure process of the my primary residence. Included in these documents were three copies of filled-out Uniform Residential Loan Applications that I had never seen before. One copy appears to be the executed April 25, 2005 Loan Application that I did not receive at the closing (the "Executed April 25 Loan Application"). The Executed April 25 Loan Application has a facsimile date and time stamp of April 26, 2005 with an area code of 682. A true and correct copy of the Executed April 25 Loan Application is attached hereto as Exhibit I.

4

15. The second Uniform Residential Loan Application provided to me, through counsel, on May 19, 2005 contains inaccurate loan terms, including, *inter alia*, an adjustable rate of 6.875% and a thirty (30) year loan period. This application is not executed. A true and correct copy of this application is attached hereto as Exhibit J.

16. The third Uniform Residential Loan Application provided to me, through counsel, on May 19, 2005 (and thus the fifth such application in all, each of which differs in some way) contains signatures for myself and Mrs. Chan on page three that are clearly forged (the "Forged Loan Application"). The forgery can be observed by a comparison of the Forged Loan Application's signatures versus the signatures on page 3 of Exhibit I. This application has a purported interview date of April 15, 2005. A true and correct copy of the Forged Loan Application is attached hereto as Exhibit K.

SIGNED UNDER THE PAINS AND PENALTY OF PERJURY, THIS 4th DAY OF SEPTEMBER, 2009

Calvin Chan