UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CALVIN LAI CHAN and BONNIE KWOK CHING CHAN,<br>    Plaintiffs,<br><br>v.<br><br>SAXON MORTGAGE SERVICE, INC.,<br>WMC MORTGAGE LLC, WELLS FARGO<br>NATIONAL ASSOCIATION AS TRUSTEE<br>FOR BANK OF AMERICA,<br>    Defendants. | Civil Action No.<br>1:09-cv-11265-JGD |

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER CONCERNING THIRD PARTY SUBPOENAS SERVED BY WMC MORTGAGE LLC

Plaintiffs Calvin Lai Chan and Bonnie Kwok Ching Chan ("Plaintiffs" or the "Chans") hereby move for entry of a protective order concerning three third-party subpoenas served by Defendant WMC Mortgage LLC ("WMC") which are overly broad in their requests for financial records of Plaintiffs. These subpoenas seek documents that were not requested or considered by WMC when it underwrote the Plaintiffs' loan in 2005 and which are not relevant to Plaintiffs' claims against WMC. In support hereof, Plaintiffs state as follows.

1. By this action, Plaintiffs seek recovery for certain conduct of WMC, including with respect to changing the terms of the loan at the April 2005 closing without notifying the Chans. The Chans also allege that WMC, itself or acting through its agent, Joseph Sullivan, falsified the Chans' loan applications, specifically by identifying income for Mrs. Chan although she has not worked during her 20 plus years living in the United States.

2.   On Friday, October 28, 2010, Plaintiffs learned that their accountant in Ohio, Richard Ary, had been served with a subpoena demanding production of their federal and state tax returns from 2001 through 2009.

3.   On inquiry to WMC's counsel, Plaintiffs' counsel obtained a copy of that subpoena. It is attached hereto at Exhibit A.

4.   On Monday, November 1, 2010, Plaintiffs received notice of three additional third-party subpoenas that WMC either had served or intended to serve as follows:

   a. Bank of America for all documents concerning deposits by Plaintiffs to their joint Fleet/Bank of America account from January 2001 through May 2005, attached at Exhibit B;

   b. Discover Financial Services ("Discover") for all statements for cards issued by Discover Financial Services, Diners Club/Carte Blanche and/or their affiliates, from December 2001 through May 2005, attached at Exhibit C; and

   c. Jeffrey Sweeney, Law Offices of Jeffrey Sweeney for all documents concerning the July 11, 2003 closing of the Plaintiffs' prior refinancing transaction with Finance America (lender), attached at Exhibit D.

5.   Each of the four subpoenas demanded production from these third parties on or before tomorrow, Friday, November 5, 2010.

6.   Plaintiffs' counsel has learned that Mr. Sweeney has no responsive documents and that he intends to so notify WMC's counsel. Plaintiffs understand or expect the other third parties, Mr. Ary, Discover, and Bank of America, may have responsive records to the subpoenas.

7.   Each of these subpoenas is over broad and Plaintiffs seek entry of a protective order prohibiting discovery of the requested documents or, in the alternative, significantly limiting their scope.

8.   The subpoena to Mr. Ary seeks Plaintiffs federal and state tax returns for nine years: 2001 through 2009. *See* Ex. A. Under Massachusetts law, the Chans' state tax returns are not discoverable. M.G.L. c. 62C, § 21; *Fin. Comm'n of Boston v. Comm'r of Rev.*, 383 Mass. 63,

68 (1981); *Town Taxi, Inc. v. Police Comm'r of Boston*, 377 Mass. 576, 587-88 (1979). As to the federal returns, the First Circuit has observed that "tax returns contain highly personal information that many taxpayers might wish not to have broadcast." *Aronson v. IRS*, 973 F.2d 962, 966 (1st Cir. 1992). Federal tax returns are, therefore, entitled to a qualified privilege and might be discoverable where "(1) they [are] relevant to the action and (2) the information contained therein [is] otherwise unobtainable." *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001). WMC cannot make such a showing here.

9.  The subpoenas to Bank of America and Discover are also overly broad and burdensome. The Bank of America subpoena seeks deposit records from 2001 through May 2005, and the Discover subpoena seeks statements for all cards issued to Plaintiffs by that company from December 2001 through May 2005. *See* Exs. B & C. Just as the law concerning discoverability of tax returns places a heavy burden on requiring their disclosure, the Court should similarly be reticent to allow burdensome and invasive discovery into Plaintiffs' personal financial affairs via these bank and credit card records, particularly given the limited nature of WMC's inquiry at the time it underwrote the Chans' loan in 2005 and the documents already produced in discovery.

10. Not only are these records of marginal relevance, as more fully explored below, but WMC does not need Plaintiffs' tax returns or broad discovery about Plaintiffs' personal finances because Plaintiffs have already produced significant information concerning their income. Mr. and Mrs. Chan testified that Mrs. Chan has not worked during the couple's 20 plus years living in the United States. *See* Exhibit E (deposition of Calvin Lai Chan) at 23; Exhibit F (deposition of Bonnie Kwok Chin Chan) at 7. Mr. Chan further testified that his income has come from his employment with his company (reported on W-2s), and that he and his wife had

no other earnings. Ex. E at 23. In response to WMC's request for documents reflecting Plaintiffs' income since 2004, Plaintiffs produced Mr. Chan's form W-2 for 2004 through 2008. Plaintiffs also produced the six months bank statements they supplied to Joseph Sullivan in March 2005. The two years bank statements Plaintiffs provided to WMC via Mr. Sullivan in 2004 were produced in discovery by WMC. Moreover, Mr. Chan has testified about small fluctuations in his earnings over the years. The discovery already obtained by WMC with regard to the Chans' income has been significant and extensive, and none of it warrants the discovery it now seeks. This information is not only obtainable through less invasive means, it has already been obtained.

11. Additional discovery of the Chans' income is not only unnecessary, but irrelevant. Plaintiffs contend the income information on the 2005 loan applications was misstated by WMC, directly and through its agent, Joseph Sullivan. WMC is expected to contend that Plaintiffs knowingly falsified the information. The only relevant issue concerning Plaintiffs' income, then, is the source of the income information stated on the various 2005 loan applications in WMC's file, including versions of the application which Plaintiffs never saw or signed (including one that was forged). As discussed above, all pertinent information on this issue has already been produced.

12. Moreover, WMC's Fed. R. Civ. P. 30(b)(6) witness was deposed on October 27, 2010, and although that transcript is not yet available, WMC testified that the April 2005 loan was a "stated" document type loan, and as such, WMC did not require or analyze any income documentation. WMC did not seek or obtain W-2 forms, pay stubs, or tax returns in order to verify income stated on the loan application prepared by WMC or Mr. Sullivan.[1]

---

[1] Plaintiffs would be pleased to provide the Court with a copy of the WMC deposition transcript, or pertinent excerpts when it is available, if it would be of assistance to the Court.

4

13.  Although the Chans have not asserted claims relating to the two loans WMC provided the Chans in 2004, which were secured by a first and second mortgage on the Chans' residence and were paid off by the 2005 loan from WMC, Mr. Chan was questioned extensively about income documents provided to Mr. Sullivan in connection with that loan at deposition. Mr. Chan did testify that the 2004 income information on the loan application was also misstated without his knowledge.

14.  Since the Chans have made no claims as to the 2004 loan, discovery into the income identified on that application and statements submitted at that time is irrelevant. In any event, WMC's witness testified that the 2004 loans were a "full doc" type loan, and WMC obtained and reviewed bank statements of the Chans' joint Bank of America (then Fleet) account for the years 2002 and 2003 for that loan. WMC did not request or obtain any other documentation.

15.  Since WMC never sought nor relied upon the Chans' tax returns, their bank account deposit information, or their credit card statements, even in 2004, that information is of no pertinence to the Chans' fundamental claim in this case: that WMC knowingly changed the terms of the 2005 loan from terms the Chans understood and had accepted to terms that were never explained or agreed to by them.

16.  Even if WMC were entitled to conduct an investigation it elected not to undertake when it underwrote the Chans' loans in 2004 and 2005, to seek to now belatedly verify the sources of deposits on the bank statements submitted to WMC or Mr. Sullivan and, unknown to Mr. Chan, potentially used to fabricate income for his wife, that inquiry should be appropriately limited to the only potentially pertinent time periods: 2002-2003 for the 2004 loan and September 2004 through February 2005 for the 2005 loan.

17. Indeed, if this inquiry were permissible at all, WMC's discovery should be limited to the records of Bank of America for this period reflecting deposits made and copies of items deposited, which would presumably include checks from credit card companies or other credit lines. The Chans' personal credit card statements from Discover or any other credit card company are not necessary.[2]

18. Unquestionably, the Chans' tax returns would not assist in any reasonable inquiry into the income reported on the applications prepared by Mr. Sullivan and/or WMC. Mr. Chan's form W-2 has been produced for the years requested by WMC in its Rule 34 document requests. There is no basis in the record to question Mr. Chan's testimony that all his earnings were reported on the form W-2. WMC should not be permitted to obtain Plaintiffs' tax returns just to verify that information. *See Praendex, Inc. v. Rutherford*, 1989 WL 73399, at *1 (D. Mass. Jun. 14, 1989) ("That income tax returns 'may lead to impeaching evidence' is not enough in this case. That the returns 'may' shed light on the issues does not satisfy the court.").

19. The request for tax returns is nothing more than an impermissible fishing expedition. If WMC is entitled to do now what it did not do before, verify information on those bank statements the Chans' submitted for the 2004 and 2005 loans, it can do that via the bank's records for the pertinent time period. There is no need for the Chans' tax returns, and the production of those personal documents should not be required in this case.

WHEREFORE, Plaintiffs respectfully request that the Court enter protective orders as follows:

---

[2] Mr. Chan did testify that deposits to his account on bank statements produced to WMC were likely from revolving credit lines and credit cards. If the Court entertains any discovery on this issue,, Bank of America's deposit records should adequately reveal the deposit sources and duplicative and invasive discovery of Plaintiffs credit card statements, which would include records of their personal expenditures which have nothing to do with this case, should not be allowed.

(a)  as to Plaintiffs' accountant, Richard Ary, the requested documents shall not be disclosed;

(b)  as to Plaintiffs' bank account at Bank of America, (i) the requested documents shall not be disclosed, or, in the alternative, (ii) Bank of America shall produce the requested records <u>only</u> for the periods 2002 through 2003 and September 2004 through February 2005, and no other records shall be disclosed;

(c)  as to Plaintiffs' credit card account with Discover, the requested documents shall not be disclosed; and

(d)  award Plaintiffs other relief as the Court deems just and equitable.

Respectfully submitted,

CALVIN LAI CHAN AND BONNIE KWOK CHING CHAN,

By their attorneys,

/s/ Megan C. Deluhery
Christopher Weld, Jr. (BBO #522230)
Megan C. Deluhery (BBO #663635)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626
cweld@toddweld.com
mdeluhery@toddweld.com

Dated: November 5, 2010

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Megan C. Deluhery, hereby certify that I conferred with counsel to WMC Mortgage LLC in an effort to resolve the matters raised in this motion by telephone conference with counsel, Eric Epstein, on Friday, October 29, 2010 and Thursday, November 4, 2010, but was unable to resolve this dispute.

/s/ Megan C. Deluhery
Megan C. Deluhery

## CERTIFICATE OF SERVICE

    I, Megan C. Deluhery, hereby certify that on this 5th day of November, 2010, this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by first-class mail on this date.

        /s/ Megan C. Deluhery
        Megan C. Deluhery